IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| Reworld Sumter Industrial, LLC, | ) | CASE NO.: 4:25-cv-05128-JD |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **MEMORANDUM ORDER AND** |
| | ) | **OPINION** |
| VEP Environmental, LLC; Vaquero | ) | |
| Energy Partners, LLC; Scott Huard; | ) | |
| Daniel Gordon; and Gary | ) | |
| Higginbotham, | ) | |
| | ) | |
| Defendants/Third-Party Plaintiffs, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| Reworld Advanced Processing, Inc., | ) | |
| Frank Costas, David Burkhardt, and | ) | |
| Paul Stauder, | ) | |
| | ) | |
| Third-Party Defendants. | ) | |
| | ) | |

This order addresses Plaintiff and Third-Party Defendants' motion to dismiss or, alternatively, sever certain counterclaims and third-party claims asserted by Defendant/Third-Party Plaintiff Gary Higginbotham ("Higginbotham") under Rules 12(b)(3), 12(b)(6), and 12(b)(7). (DE 66.) The motion does not seek dismissal of all claims asserted by Higginbotham. Rather, it focuses on two categories: the claims arising from Higginbotham's Class B Unit Agreement with Covert Topco Partnership, LP, and Higginbotham's ADEA Counterclaim.

Higginbotham has responded in opposition (DE 70), and Plaintiff and Third-Party Defendants Reworld Advanced Processing, Inc. ("RAP"), Frank Costas,

David Burkhardt, and Paul Stauder (collectively "Third-Party Defendants") have replied (DE 73). For the reasons below, the Court grants in part and denies in part Plaintiff and Third-Party Defendants' Motion to Dismiss or, in the Alternative, to Sever and Transfer. (DE 66.)

## I.   BACKGROUND

### A.   Factual Background

The following facts are drawn from Plaintiff's Verified Complaint and Defendant Higginbotham's answer to the Complaint, where he asserted eight counterclaims.

### 1.   The Parties

Reworld Sumter Industrial, LLC ("Reworld Sumter"), is alleged to be a limited liability company with its principal office in Sumter, South Carolina. (DE 1, Compl. ¶¶ 12–14.) Reworld Sumter alleges that it provides sustainable waste removal, recycling, and refinery support services throughout the United States and has developed competitively sensitive processes, pricing models, and client relationships. (*Id.* ¶¶ 49–53, 80–83, 100–02.)

Defendant VEP Environmental, LLC ("VEP"), is alleged to be a Texas limited liability company with its principal place of business in Galena Park, Texas. (*Id.* ¶ 19.) Defendant Vaquero Energy Partners, LLC ("Vaquero"), is alleged to be a Texas

limited liability company with its principal place of business in Kingwood, Texas (VEP and Vaquero collectively "Corporate Defendants").[1] (*Id.* ¶ 20.)

The Individual Defendants are former senior employees of Plaintiff:

- Scott Huard – employed by Plaintiff beginning in 2016 as Manager of Business Development. (*Id.* ¶¶ 18, 48–51.)

- Daniel Gordon – employed beginning in 2012, most recently as Solutions Sales Manager. (*Id.* ¶¶ 21, 67–71.)

- Gary Higginbotham – employed beginning in 2013, most recently as Chief Commercial Officer for the Refinery Services Group. (*Id.* ¶¶ 24, 75–81.) Higginbotham is a citizen and resident of Texas. (*Id.* ¶ 40.)

Higginbotham asserts counterclaims against Reworld Sumter and third-party claims against Reworld Advanced Processing, Inc., Frank Costas, David Burkhardt, and Paul Stauder. Their relationships are summarized as follows:

- Reworld Sumter Industrial, LLC – the original Plaintiff who employed Higginbotham from 2013 to 2025. (DE 47 ¶¶ 279–282.)

- Reworld Advanced Processing, Inc. – an entity associated with Reworld Sumter that is incorporated with a principal place of business in Texas. (*Id.* ¶¶ 295–299.)

- Frank Costas – an employee of Reworld Sumter who is a resident and citizen of South Carolina. (*Id.* ¶¶ 290, 292.)

- David Burkhardt – an employee of Reworld Advanced Processing, Inc., who is a resident and citizen of Alabama. (*Id.* ¶¶ 291, 293.)

---

[1]    For purposes of summarizing the pleadings, the Court recites the parties' jurisdictional allegations. The Court has subject-matter jurisdiction over the original action under 28 U.S.C. § 1331 because the Complaint asserts a claim under the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836(c). The Court exercises supplemental jurisdiction over related state-law claims under 28 U.S.C. § 1367(a). The parties' venue and forum-selection arguments are addressed separately and do not alter the Court's subject-matter jurisdiction over the original action.

- Paul Stauder – an employee of Reworld Sumter who is a resident and citizen of New Jersey. (*Id.* ¶¶ 290, 294.)

## 2.   The Claims

In its original Complaint, Plaintiff asserts eight causes of action: breach of contract, tortious interference, unjust enrichment, violation of the South Carolina Unfair Trade Practices Act ("SCUTPA"), breach of duty of loyalty, misappropriation under the South Carolina Trade Secrets Act, misappropriation under the Defend Trade Secrets Act, and civil conspiracy. (DE 1 ¶¶ 159–268.)  Plaintiff based those allegations on Higginbotham's alleged conduct to include breach of a restrictive covenant agreement, theft of confidential information, interference with Plaintiff's business clients, and conspiracy to misappropriate Plaintiff's confidential information and divert business opportunities. (DE 1 ¶¶ 75–88, 92–158.) Those causes of action are not at issue in this motion and are recited only for context for the relationship between the parties.

In his answer to the Complaint, Higginbotham asserts eight counterclaims related to his employment at Reworld Sumter:

- Age Discrimination under the Age Discrimination in Employment Act ("ADEA"), alleging that Reworld Sumter discharged him because of his age as part of a pattern of forcing out older employees. (DE 47 ¶¶ 279–88.) (The ADEA Counterclaim.)

- Defamation against Reworld Sumter, RAP, and the other Third-Party Defendants, alleging that they collectively fabricated and published false and defamatory statements that Higginbotham misappropriated trade secrets and confidential information.[2] (*Id.* ¶¶ 289–301.)

---

[2]    The present motion does not seek dismissal or severance of the defamation counterclaim. Plaintiff and Third-Party Defendants acknowledge that the defamation counterclaim is similar to counterclaims asserted by other Individual Defendants and is arguably related to Plaintiff's original claims. (DE 66 at 14.)

- Tortious Interference with a Contract against Reworld Sumter, alleging that Reworld Sumter terminated Higginbotham for cause, which caused Higginbotham to lose the return on his investment from an incentive unit agreement with Covert Topco Partnership, LP ("Covert"), an entity allegedly affiliated with Reworld Sumter. (*Id*. ¶¶ 302–12.)

- Unjust Enrichment against Reworld Sumter, alleging that Reworld Sumter will retain a benefit through its wrongful termination of Higginbotham and its interference with Higginbotham's incentive unit agreement with Covert. (*Id*. ¶¶ 313–17.)

- Breach of Contract against Reworld Sumter for the incentive unit contract that Higginbotham entered as a management investor with Covert. (*Id*. ¶¶ 318–324.) The Class B Unit Agreement identifies Covert Topco Partnership, LP as the "Partnership" and Higginbotham as the "Employee." The agreement is attached to the motion as DE 66-3. (DE 66-3.)

- Violation of the South Carolina Unfair Trade Practices Act against Reworld Sumter, RAP, and the other Third-Party Defendants for their participation in a scheme to fabricate claims against Higginbotham to avoid paying him compensation, gain unfair competitive advantages against him, and ruin his future employment possibilities. (*Id*. ¶¶ 325–31.)

- Declaratory Judgment against Reworld Sumter, arguing that the restrictive covenants are unenforceable in scope.[3] (*Id*. ¶¶ 332–35.)

- Injunctive Relief against Reworld Sumter, RAP, and the other Third-Party Defendants to order them to stop defaming Higginbotham.[4] (*Id*. 336–39.)

---

[3]    The present motion does not seek independent dismissal or severance of this counterclaim, and the parties do not meaningfully brief it as a separate issue. The Court therefore does not address it in this Order.

[4]    The present motion does not seek independent dismissal or severance of this counterclaim, and the parties do not meaningfully brief it as a separate issue. The Court therefore does not address it in this Order.

### 3.    The Motion

The present motion challenges the ADEA Counterclaim and the Class B contract-related claims—namely, the claims for tortious interference with contract, unjust enrichment, breach of contract, and SCUTPA to the extent they arise from the Class B Unit Agreement. The challenged counterclaims arise from two asserted consequences of Higginbotham's termination: first, his contention that the termination was age-based rather than based on the alleged misconduct described in Plaintiff's Complaint; and second, his contention that the termination affected his rights under the Class B Unit Agreement. (DE 1; DE 47.)

Specifically, Higginbotham alleges that first, he was terminated from his employment on the basis of his age, rather than his alleged acts from Reworld Sumter's original complaint. (DE 66-1 "EEOC Charge"). Higginbotham states in his EEOC Charge that he was employed at Reworld Sumter from 2024 until 2025 when he was discharged based on "false statements regarding fabricated allegations concerning [his] performance and conduct." (*Id*. at 2–3.) Higginbotham states that beginning in 2024, after Reworld Sumter took over as his employer following its purchase of his original employer, he was moved from his department and replaced by a younger woman. (*Id*. at 2.) He also states that he was terminated by the company president, who is younger than him, and that all of the individuals associated with his termination are younger than him. (*Id*. at 2–3.) Higginbotham also alleges that he was part of the "last group of older employees who were employed by Reworld []

and its predecessor entities, although some of the older employees were forced to resign and others were discharged." (*Id.*)

Higginbotham then brings several claims, specifically counterclaims 3, 4, 5, and 6, arising from an agreement he entered into with Covert Topco Partnership, LP, an alleged affiliate of Reworld Sumter. (DE 47 ¶¶ 302–31; DE 66-3.) Higginbotham served as the Chief Commercial Officer for the Refinery Services Group at Reworld Sumter before his termination. (DE 1 at ¶ 76.) As a benefit of that managerial role, Higginbotham entered into an incentive unit agreement ("Class B Unit Agreement") through which he allegedly obtained an equity-like interest in Covert Topco Partnership, LP.[5] (DE 47 at ¶ 320; DE 66-3.) Under that agreement, Higginbotham received 909.81020 incentive units without any pecuniary consideration paid or any other capital contribution. (DE 66-3 at 5.) The agreement states that the "Threshold Value" for the Incentive Units was \$2,094,570,588.6349. (*Id.*) Several provisions of the Class B Agreement provided that the incentive units would be forfeited if Higginbotham was terminated by either the partnership or any of its affiliates for cause. (*Id.* at 6, 18–19.) The Class B Agreement also contained a forum-selection clause, where Delaware would be the agreed-upon venue for any dispute relating to the agreement. (*Id.* at 15.)

Higginbotham alleges that Reworld Sumter breached this agreement by terminating him for cause, when he was actually terminated for his age. (DE 47.) He

---

[5]     The Court recites this alleged affiliation only as background and does not treat it as resolving whether Covert's interests are adequately represented by any existing party.

also alleges that Reworld Sumter's termination decision caused him to lose the units or benefits he otherwise would have received under the Class B Unit Agreement. (*Id.*)

## B.     Procedural Background

Plaintiff filed its Verified Complaint on June 9, 2025, asserting federal and state-law claims against Defendants and attaching copies of the Restrictive Covenant Agreements and related exhibits. (DE 1.) On the same day, Plaintiff filed a Motion for Temporary Restraining Order and Preliminary Injunction ("TRO/PI Motion"). (DE 4.) Then, on July 1, 2025, Defendants filed two motions to dismiss: (1) a Motion to Dismiss for Lack of Personal Jurisdiction under Rule 12(b)(2) (DE 25), and (2) a Motion to Dismiss for Failure to State a Claim under Rule 12(b)(6), or, in the alternative, for a more definite statement under Rule 12(e) (DE 26). The Court issued an order on September 19, 2025, denying Defendants' Motions to Dismiss and Plaintiff's Motion for Expedited Discovery, while granting Plaintiff's Motion for Preliminary Injunction, enjoining Defendants from using or disclosing Plaintiff's confidential and trade secret information; soliciting Plaintiff's restricted clients in violation of the restrictive covenant agreements; and otherwise inducing breaches of the restrictive covenant agreements. (DE 41 at 37–38.)

Defendant Higginbotham then answered Plaintiff's original Complaint, asserting several defenses and alleging eight counterclaims. (DE 47.) Higginbotham brought the counterclaims against Reworld Sumter, RAP, Frank Costas, David Burkhardt, and Paul Stauder. (*Id.*) Those Third-Party Defendants then moved to dismiss or, alternatively, sever, asserting that:

(1)    the action should be dismissed pursuant to Rule 12(b)(3) due to the forum-selection clause in Higginbotham's agreement with Covert;

(2)    Higginbotham failed to state a claim under the Class B Agreement for which relief can be granted under Rule 12(b)(6);[6]

(3)    the Class B Agreement claims should be dismissed pursuant to Rule 12(b)(7) because Covert, as the other party to the contract with Higginbotham, is a required party whose absence warrants dismissal under Rule 12(b)(7) and Rule 19; and

(4)    Higginbotham's ADEA Counterclaim is permissive under the Rule 21 framework and should be severed.

(DE 66 at 6–13.) Higginbotham filed a Response (DE 70). Third-Party Defendants filed a Reply (DE 73). Third-Party Defendants do not seek dismissal on Counterclaim 2, the defamation claim. (DE 70.) The issues are now fully briefed, and the Motion is ripe for review.

## II.    LEGAL STANDARDS

### A.    Rule 12(b)(7) and Rule 19

Rule 12(b)(7) permits dismissal for "failure to join a party under Rule 19." Fed. R. Civ. P. 12(b)(7). The party seeking dismissal bears the burden of showing that the absent person is required for a just adjudication. *See Am. Gen. Life & Accident Ins. Co. v. Wood*, 429 F.3d 83, 92 (4th Cir. 2005) (explaining that the movant must show that the absentee is "needed for just adjudication"). In deciding a Rule 12(b)(7) motion, the court accepts the complaint's factual allegations as true and draws reasonable inferences in favor of the nonmoving party, but the court may consider

---

[6]    Neither Plaintiff nor Third-Party Defendants substantively brief the Rule 12(b)(6) argument. Because addressing that issue would not affect the ultimate disposition of the Motion, the Court omits a separate Rule 12(b)(6) analysis.

evidence outside the pleadings relevant to the Rule 19 inquiry. *See* 5C Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1359 (3d ed. 2026).

Rule 19 "sets forth a two-step inquiry for courts to determine whether a party is 'necessary' and 'indispensable.'" *Home Buyers Warranty Corp. v. Hanna*, 750 F.3d 427, 433 (4th Cir. 2014). When adjudicating a Rule 19 motion, the court first asks whether the nonjoined party is necessary under Rule 19(a), and then, if joinder is necessary but not feasible, whether the party is indispensable under Rule 19(b). *Gunvor SA v. Kayablian*, 948 F.3d 214, 218–19 (4th Cir. 2020); *Nat'l Union Fire Ins. Co. v. Rite Aid of S.C., Inc.*, 210 F.3d 246, 249 (4th Cir. 2000). Under Rule 19(a), the court considers "whether a party is necessary to a proceeding because of its relationship to the matter under consideration." *Home Buyers*, 750 F.3d at 433 (quoting *Teamsters Local Union No. 171 v. Keal Driveaway Co.*, 173 F.3d 915, 917 (4th Cir. 1999)). If the absent party is necessary but cannot feasibly be joined, the court determines under Rule 19(b) "whether the proceeding can continue in that party's absence." *Id.* at 433–34. If the absent party is both necessary and indispensable, and joinder is not feasible, dismissal is required. *Gunvor*, 948 F.3d at 219; *Owens-Illinois, Inc. v. Meade*, 186 F.3d 435, 440 (4th Cir. 1999).

A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined if: "in that person's absence, the court cannot accord complete relief among existing parties"; or the person "claims an interest relating to the subject of the action" and disposing of the action in the person's absence may, "as a practical matter," impair or impede the person's ability

10

to protect that interest, or leave an existing party subject to a substantial risk of double, multiple, or otherwise inconsistent obligations. Fed. R. Civ. P. 19(a)(1). If such a person has not been joined, "the court must order that the person be made a party." Fed. R. Civ. P. 19(a)(2).

The Rule 19 inquiry is "a practical one" committed to "the sound discretion of the trial court." *Coastal Modular Corp. v. Laminators, Inc.*, 635 F.2d 1102, 1108 (4th Cir. 1980). Rule 19, therefore, "is not to be applied as a 'procedural formula.'" *Home Buyers*, 750 F.3d at 433. Rather, decisions "must be made pragmatically, in the context of the 'substance' of each case," and courts must consider possible prejudice "to all parties, including those not before it." *Id.* (quoting *Provident Tradesmens Bank & Tr. Co. v. Patterson*, 390 U.S. 102, 119 n.16 (1968), and *Owens-Illinois, Inc.*, 186 F.3d at 441). The inquiry may require the court to "forecast the future course" of the litigation, "which of course is no simple matter." *Id.* at 434.

If joinder is feasible, the proper remedy ordinarily is joinder, not dismissal. *See* Fed. R. Civ. P. 19(a)(2). If joinder is not feasible, Rule 19(b) requires the court to determine whether, "in equity and good conscience," the action should proceed among the existing parties or be dismissed. Fed. R. Civ. P. 19(b). The Rule 19(b) factors include: "the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties"; the extent to which prejudice could be avoided or lessened; whether a judgment rendered in the person's absence would be adequate; and whether the plaintiff would have an adequate remedy if the action were dismissed. Fed. R. Civ. P. 19(b)(1)–(4).

11

Dismissal for nonjoinder is a "drastic remedy [that] should be employed only sparingly," but it is required when an absent party is both necessary and indispensable. *Home Buyers*, 750 F.3d at 433 (quoting *Keal*, 173 F.3d at 918). Consistent with that principle, the Fourth Circuit has recognized that federal courts are generally "loath to dismiss cases based on nonjoinder of a party," and dismissal is appropriate only when the defect cannot be cured and prejudice or inefficiency will result. *Owens-Illinois*, 186 F.3d at 441.

When assessing whether an absent person's interests are adequately protected, the court considers practical realities rather than labels. In contract disputes, the Fourth Circuit has recognized that "a contracting party is the paradigm of an indispensable party." *Gunvor*, 948 F.3d at 221–22. An absent person is not required merely because it may have some tangential interest in the litigation, and a movant's theoretical possibility of later litigation is insufficient where the record does not show a substantial risk of multiple or inconsistent obligations. *See Coastal Modular*, 635 F.2d at 1108. Conversely, joinder may be required where the absent person has a direct interest in the subject of the action, where adjudication may impair that person's ability to protect that interest, or where parallel proceedings create a substantial risk of inconsistent obligations. *See Home Buyers*, 750 F.3d at 434–35.

Finally, the adequacy of representation by existing parties is a practical consideration. The fact that an existing party and an absent person share a general interest does not necessarily mean that the existing party will protect the absent

12

person's specific interests. *See Home Buyers*, 750 F.3d at 435–36. At the same time, Rule 19 does not require joinder based on abstract, speculative, or merely theoretical concerns; the movant must identify a concrete interest and a practical risk of prejudice, impairment, or inconsistent obligations.

## B.    Forum Selection Clause

28 U.S.C. § 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." "The appropriate venue of an action is a procedural matter that is governed by federal rule and statutes." *Albemarle Corp. v. AstraZeneca UK Ltd.*, 628 F.3d 643, 651 (4th Cir. 2010) (*citing* Fed. R. Civ. P. 12(b)(3); 28 U.S.C. § 1391; 28 U.S.C. § 1406(a)). "Whether a case should be transferred to an alternative venue rests within the sound discretion of the district court." *Sw. Equip., Inc. v. Stoner & Co., Inc.*, C/A No. 6:10-1765-HMH, 2010 U.S. Dist. LEXIS 116254, 2010 WL 4484012, at *2 (D.S.C. Nov. 1, 2010) (*citing In re Ralston Purina Co.*, 726 F.2d 1002, 1005 (4th Cir. 1984)).

"In the typical case not involving a forum-selection clause, a district court considering a § 1404(a) motion (or a forum non conveniens motion) must evaluate both the convenience of the parties and various public-interest considerations." *Atl. Marine Constr. Co. v. U.S. Dist. Ct. W.D. Tex.*, 571 U.S. 49, 62–63 (2013). However, "[w]hen the parties have agreed to a valid forum-selection clause, a district court should ordinarily transfer the case to the forum specified in that clause." *Id.* "[A] valid

forum-selection clause, which 'represents the parties' agreement as to the most proper forum[,]'" should be "'given controlling weight in all but the most exceptional cases.'" *Id.* (quoting *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 31–33, (1988)).

A court conducts a two-part analysis in deciding whether to enforce a forum selection clause. First, the court determines whether the forum-selection clause is valid and enforceable. *Atl. Marine*, 571 U.S. at 63. A forum-selection clause is "prima facie valid and should be enforced unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances." *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10 (1972). A forum-selection clause may be considered unreasonable if "(1) [its] formation was induced by fraud or over-reaching; (2) the complaining party 'will for all practical purposes be deprived of his day in court' because of the grave inconvenience or unfairness of the selected forum; (3) the fundamental unfairness of the chosen law may deprive the plaintiff of a remedy; or (4)[its] enforcement would contravene a strong public policy of the forum state." *Albemarle Corp.*, 628 F.3d at 651 (quoting *Allen v. Lloyd's of London*, 94 F.3d 923, 928 (4th Cir. 1996)).

Second, the court must consider whether "extraordinary circumstances" would hinder the enforcement of the forum-selection clause. *Atl. Marine*, 571 U.S at 62. In considering whether extraordinary circumstances are present to avoid enforcement of a valid forum selection clause, a court may consider "arguments about public-interest factors only." *Id.* at 64.[7]

---

[7]    Where, as here, the asserted forum-selection clause is invoked in a dispute involving non-signatories and claims that may be severed, the clause may still inform the Court's severance and transfer analysis even if the Court does not decide whether the clause independently binds every party.

14

## C.    Rule 21 Severance of Claims

Rule 21 provides that, "[o]n motion or on its own, the court may at any time, on just terms, add or drop a party," and "may also sever any claim against a party." Fed. R. Civ. P. 21. The decision whether to sever claims lies within the broad discretion of the district court. *See C.L. Ritter Lumber Co. v. Consol. Coal Co.*, 283 F.3d 226, 229–30 (4th Cir. 2002); *Equal Rights Ctr. v. Equity Residential*, 483 F. Supp. 2d 482, 489 (D. Md. 2007); *Grayson Consulting, Inc. v. Cathcart*, No. 2:07-cv-02992-DCN, 2014 WL 1512029, at *2 (D.S.C. Apr. 8, 2014). In exercising that discretion, courts commonly consider: "(1) whether the issues sought to be tried separately are significantly different from one another; (2) whether the separable issues require different witnesses and different documentary proof; (3) whether the party opposing severance will be prejudiced if it is granted; and (4) whether the party requesting severance will be prejudiced if the claims are not severed." *Equal Rights Ctr.*, 483 F. Supp. 2d at 489.

Severance under Rule 21 is distinct from ordering separate trials under Rule 42(b). A severed claim proceeds as a discrete action and may result in a separate final judgment. *See* 7 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1689 (3d ed. 2026). Because related claims ordinarily should be resolved in a single action where doing so is fair and efficient, courts consider whether severance would promote judicial economy, avoid prejudice, and facilitate orderly resolution, or instead would cause duplicative proceedings, undue delay, added expense, or inconsistent results.

When severance is sought as to counterclaims, the court may also consider whether the counterclaims are compulsory or permissive. In the Fourth Circuit, courts ask whether: "(1) the issues of fact and law raised in the claim and counterclaim [are] largely the same; (2) res judicata [would] bar a subsequent suit on the counterclaim; (3) substantially the same evidence [would] support or refute the claim and counterclaim; and (4) there is a logical relationship between the claim and counterclaim." *Painter v. Harvey*, 863 F.2d 329, 331 (4th Cir. 1988). These inquiries are "less a litmus, more a guideline," and substantial factual or evidentiary overlap generally weighs against severance. *Id.* at 331–32.

## III.   DISCUSSION

Plaintiff and Third-Party Defendants move to dismiss or, alternatively, sever two categories of claims asserted by Higginbotham: first, the claims arising from or dependent upon the Class B Unit Agreement between Higginbotham and Covert; and second, Higginbotham's ADEA Counterclaim. (DE 66 at 6, 11.) The Court addresses each category separately.

For purposes of this Order, the "Class B claims" means Counterclaims Three through Six only to the extent those claims seek relief based on Higginbotham's alleged loss of rights, units, investment proceeds, incentive compensation, or other benefits under the Class B Unit Agreement. The Court does not read the motion as seeking dismissal or severance of Higginbotham's defamation counterclaim, declaratory-judgment counterclaim, or request for injunctive relief except to the extent any such relief is derivative of the Class B Unit Agreement.

16

For the reasons below, dismissal is not the most appropriate remedy at this stage. The Class B claims are severed under Rule 21 and transferred to the United States District Court for the District of Delaware under 28 U.S.C. § 1404(a). Higginbotham's ADEA Counterclaim is severed under Rule 21 but remains in this District as a separate action.

## A.    Class B Claims

### 1.    The Class B claims are centered on a separate agreement with a nonparty.

The Class B claims arise from a contract different from the restrictive covenant agreements at issue in Plaintiff's original Complaint. Plaintiff's original action concerns alleged breaches of restrictive covenants, misappropriation of confidential information and trade secrets, interference with customer relationships, and diversion of business opportunities. (DE 1 ¶¶ 75–158, 159–268.) By contrast, the Class B claims concern whether Higginbotham's termination affected his rights under an incentive-unit agreement with Covert. (DE 47 ¶¶ 302–12; DE 66-3.)

The Class B Unit Agreement identifies Covert as the "Partnership" and Higginbotham as the "Employee." (DE 66-3 at 2.) It provides for the issuance of 909.81020 Incentive Units to Higginbotham and states a Threshold Value for those Incentive Units. (DE 66-3 at 5.) The Court does not determine the economic value of Higginbotham's interest at this stage. It is sufficient that Higginbotham's Class B claims place at issue rights and obligations arising from an agreement to which Covert, not Reworld Sumter or the Third-Party Defendants, is the named contractual counterparty.

17

Higginbotham alleges, among other things, that Plaintiff acted "in concert with Covert" to terminate him for cause and thereby prevent him from receiving the benefit of the Class B Unit Agreement. (DE 47 ¶ 307.) Plaintiff and Third-Party Defendants respond that neither Reworld Sumter nor Reworld Advanced is a party to the Class B Unit Agreement and that any dispute over that agreement requires Covert's participation. (DE 66; DE 73.) The Court agrees that the Class B claims cannot be fairly adjudicated as ordinary counterclaims in this restrictive-covenant and trade-secret action without substantially expanding the case into a separate investment-contract dispute involving a nonparty.

**2.      The forum-selection clause supports transfer but does not require dismissal under Rule 12(b)(3) on this record.**

The Class B Unit Agreement contains a Delaware forum-selection provision. It provides that "[a]ny dispute relating hereto shall be heard in the state or federal courts of the State of Delaware," and that the parties to that agreement consent to jurisdiction and venue there. (DE 66-3 at 15.)

Federal law governs the effect of a forum-selection clause in federal court. *See Albemarle Corp.*, 628 F.3d at 650–51. A forum-selection clause is generally enforceable unless the resisting party makes a "strong showing" that enforcement would be unreasonable under the circumstances. *See M/S Bremen*, 407 U.S. at 15; *Allen v. Lloyd's of London*, 94 F.3d 923, 928 (4th Cir. 1996). Federal law also recognizes that § 1404(a), rather than Rule 12(b)(3), is generally the appropriate mechanism to enforce a forum-selection clause designating another federal forum

18

when venue is otherwise proper under the federal venue statutes. *See Atl. Marine*, 571 U.S. at 55–61; *Stewart Org., Inc.*, 487 U.S. at 29–31.

The clause uses mandatory language: "shall be heard in the state or federal courts of the State of Delaware[.]" (DE 66-3 at 15, §10.7 Governing Law.) And the Class B claims, as defined above, relate to the Class B Unit Agreement because they seek relief for alleged loss of rights or benefits under that agreement. (DE 47 ¶¶ 302–31; DE 66-3.)

That said, the present motion is not a straightforward suit between the two signatories to the Class B Unit Agreement. Higginbotham asserts the Class B claims against Reworld Sumter and certain Third-Party Defendants, while Covert is not presently a party. Higginbotham argues, among other things, that nonparties cannot enforce the forum-selection clause in the agreement. (DE 70 at 6.) The Court need not resolve the full scope of non-signatory enforcement under Rule 12(b)(3) because dismissal is not necessary to give effect to the practical force of the clause. The clause is properly considered in determining whether the Class B claims should be severed and transferred under Rule 21 and § 1404(a). *See Atl. Marine*, 571 U.S. at 59–66.

Accordingly, the Court denies the motion to the extent it seeks dismissal of the Class B claims under Rule 12(b)(3) or Rule 12(b)(6) but considers the Delaware forum-selection clause as a substantial factor supporting severance and transfer.

**3.      Covert is a required party for adjudication of the Class B claims.**

Rule 19 requires a practical inquiry focused on the absent party's relationship to the dispute and the risk of prejudice, incomplete relief, or inconsistent obligations.

19

*See Provident Tradesmens Bank & Tr. Co. v. Patterson*, 390 U.S. 102, 118–19 (1968); *Home Buyers*, 750 F.3d at 433–36. Under Rule 19(a), a person must be joined if, in that person's absence, the court cannot accord complete relief among existing parties, or if the absent person claims an interest relating to the subject of the action and disposing of the action in the person's absence may impair that interest or expose existing parties to a substantial risk of inconsistent obligations. Fed. R. Civ. P. 19(a)(1).

The Fourth Circuit has repeatedly treated absent contracting parties as parties whose interests warrant careful Rule 19 protection when adjudication would require the court to construe the contract, assess the absent party's performance, or otherwise affect the absent party's contractual rights or obligations. *See Gunvor*, 948 F.3d at 221–22; *Nat'l Union Fire Ins. Co. of Pittsburgh v. Rite Aid of S.C., Inc.*, 210 F.3d 246, 252–53 (4th Cir. 2000). That principle applies here. The Class B claims require examination of the Class B Unit Agreement, the meaning and effect of provisions governing termination, cause, forfeiture, vesting, repurchase, or related rights, and the relationship among Higginbotham, Covert, and the existing parties. Any adjudication of those issues could practically impair Covert's contractual interests or create a risk of inconsistent rulings in a later proceeding involving Covert.

The Court, therefore, concludes that Covert is a required party under Rule 19(a) for the Class B claims. The Court need not decide whether dismissal would be required under Rule 19(b) if the only options were adjudication in this case or

20

dismissal. Rule 19 is practical and equitable, not mechanical. *See Provident Tradesmens*, 390 U.S. at 118–19; *Home Buyers*, 750 F.3d at 433. Because the Rule 19 problem can be addressed through severance and transfer to the forum contemplated by the Class B Unit Agreement, that remedy better serves the interests of justice than outright dismissal.

### 4.    Severance and transfer are the appropriate remedies for the Class B claims.

Rule 21 permits a court, "[o]n motion or on its own," to "sever any claim against a party." Fed. R. Civ. P. 21. District courts have broad discretion to sever claims when doing so will promote fairness, judicial economy, and orderly case management. *See C.L. Ritter Lumber Co.*, 283 F.3d at 229–30; *Equal Rights Ctr.*, 483 F. Supp. 2d at 489. Section 1404(a) permits transfer of a civil action to another district where it might have been brought or to which the parties have consented, for the convenience of parties and witnesses and in the interest of justice. 28 U.S.C. § 1404(a); *Stewart*, 487 U.S. at 29. Transfer under § 1404(a) is committed to the district court's discretion. *See In re Ralston Purina Co.*, 726 F.2d at 1005.

The Class B claims should be severed. They arise from a separate contract, involve a nonparty contractual counterparty, implicate Delaware law and a Delaware forum-selection clause, and would require proof beyond the proof needed to resolve Plaintiff's restrictive-covenant, trade-secret, and business-diversion claims. Trying the Class B claims in this action would expand discovery, require the Court and factfinder to address a separate investment-contract dispute, and risk prejudice to Covert's contractual interests in its absence.

21

Transfer to the District of Delaware is also appropriate. The Class B Unit Agreement designates Delaware state or federal courts as the forum for disputes relating to that agreement. (DE 66-3 at 15.) Although the Court need not decide whether the forum-selection clause independently requires dismissal or transfer as against non-signatories, the clause remains a substantial public-interest and case-management consideration because the severed claims arise from the very agreement containing that clause. *See Atl. Marine,* 571 U.S. at 63–66. Transfer also avoids the inefficiency of dismissal and refiling while preserving Higginbotham's ability to pursue the Class B claims in a forum contemplated by the agreement.

Accordingly, Counterclaims Three through Six, to the extent they arise from or seek relief based on the Class B Unit Agreement, are severed under Rule 21 and transferred under 28 U.S.C. § 1404(a) to the United States District Court for the District of Delaware.

## B.    ADEA Counterclaim

Plaintiff and Third-Party Defendants also seek severance of Higginbotham's ADEA Counterclaim. (DE 66 at 11.) They do not ask the Court to transfer that claim to another district. The question is, therefore, whether the ADEA Counterclaim should remain part of this action or proceed separately.

### 1.    The ADEA Counterclaim shares a factual point of contact with the original action.

The Court recognizes that the ADEA Counterclaim is not wholly unrelated to this case. Both sides' theories involve Higginbotham's termination. Plaintiff alleges that Higginbotham was terminated because he violated restrictive covenants,

22

misused confidential information, breached duties owed to Plaintiff, and participated in diverting business opportunities. (DE 1 ¶¶ 75–158, 159–268.) Higginbotham alleges that those stated reasons were false or pretextual and that he was terminated because of his age. (DE 47 ¶¶ 279–88.)

That factual overlap is real. Some witnesses and documents may bear on both the asserted reasons for termination and Higginbotham's contention that those reasons were pretextual. But overlap alone does not control the Rule 21 analysis. The question is whether the ADEA Counterclaim should proceed in the same action despite distinct legal standards, different proof, likely expanded discovery, and the risk of jury confusion.

### 2.    The ADEA Counterclaim raises distinct legal and factual issues.

The ADEA makes it unlawful for an employer to discharge an individual or otherwise discriminate against an individual because of age. 29 U.S.C. § 623(a). A plaintiff asserting an ADEA disparate-treatment claim must prove by a preponderance of the evidence "that age was the 'but-for cause' of the employer's adverse decision." *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 176 (2009). Without direct evidence, ADEA claims may proceed under the familiar *McDonnell Douglas* burden-shifting framework. *See Westmoreland v. TWC Admin. LLC*, 924 F.3d 718, 725–26 (4th Cir. 2019); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

Those issues are materially different from the issues raised by Plaintiff's original claims. Plaintiff's claims concern contractual restrictive covenants, trade secrets, confidential information, customer relationships, alleged diversion of

23

business opportunities, and alleged conduct by multiple defendants. The ADEA Counterclaim concerns Higginbotham's age, the identity and motives of the employment decision-makers, comparator or replacement evidence, employment practices, and whether the stated reasons for termination were a pretext for age discrimination.

Higginbotham's EEOC Charge confirms that distinction. In that Charge, Higginbotham alleges that he was 61 years old, was marginalized after Reworld Projects purchased the company, was replaced by a younger employee, was terminated by younger decision-makers, and was among the last older employees to leave the company. (DE 66-1 at 2–3.) Those allegations may require discovery into employment structure, decision-maker intent, comparator employees, personnel records, and workplace practices. Such discovery would differ substantially from the discovery needed to resolve the trade-secret and restrictive-covenant claims.

### 3.     The Rule 21 factors favor severance of the ADEA Counterclaim.

When considering severance, courts look to whether the issues are significantly different, whether the claims require different witnesses and documentary proof, whether severance would prejudice the opposing party, and whether failure to sever would prejudice the moving party. *See C.L. Ritter*, 283 F.3d at 229–30; *Equal Rights Ctr.*, 483 F. Supp. 2d at 489. In the counterclaim context, courts also consider whether the counterclaim is compulsory or permissive. The Fourth Circuit's compulsory-counterclaim inquiry asks whether the issues of fact and law are largely the same, whether res judicata would bar a later suit, whether substantially the same

24

evidence would support or refute both claims, and whether there is a logical relationship between the claims. *Painter*, 863 F.2d at 331–32.

Even assuming the ADEA Counterclaim has a logical relationship to the original claims because both concern the termination decision, Rule 21 permits severance where separate treatment will promote fairness, avoid jury confusion, and streamline discovery and trial. Here, the ADEA Counterclaim shares a factual point of contact with the original action because both concern the termination decision. But the legal standards, proof, and likely discovery are substantially different. The original action will focus on restrictive covenants, alleged misuse of confidential and trade-secret information, customer solicitation, and damages arising from alleged business diversion. The ADEA claim will focus on age, decisionmaker motive, employment comparators, pretext, and but-for causation. *See Gross*, 557 U.S. at 176–78; *Westmoreland*, 924 F.3d at 725–26.

Trying the ADEA Counterclaim together with Plaintiff's original claims also risks confusing the issues for a jury. The factfinder would be asked to decide, in one proceeding, trade-secret and restrictive-covenant issues, alleged defamatory statements, and whether age discrimination was the but-for cause of Higginbotham's termination. Severance will allow each matter to proceed on its own legal standards without depriving Higginbotham of a forum for his ADEA claim.

The Court, therefore, concludes that the ADEA Counterclaim should be severed under Rule 21. Unlike the Class B claims, however, the ADEA Counterclaim is not subject to the Class B Unit Agreement's Delaware forum-selection clause, and

Plaintiff and Third-Party Defendants have not shown that transfer is warranted. The ADEA Counterclaim will, therefore, remain in this District as a separate action.

## C.       Summary of Disposition

In sum, the Court denies dismissal of the challenged claims under Rules 12(b)(3), 12(b)(6), and 12(b)(7). The Rule 19 issues surrounding Covert and the Delaware forum-selection clause support severance and transfer rather than dismissal. Counterclaims Three through Six, to the extent they arise from or seek relief based on the Class B Unit Agreement, are severed and transferred to the United States District Court for the District of Delaware. Counterclaim One, the ADEA Counterclaim, is severed into a separate action in this District. The remaining claims and counterclaims stay in this case.

## IV.    CONCLUSION

For the reasons above, Plaintiff and Third-Party Defendants' Motion to Dismiss or, in the Alternative, to Sever and Transfer (DE 66) is **GRANTED IN PART** and **DENIED IN PART** as follows:

1.  **Counterclaim One — ADEA Counterclaim.** The Motion is **GRANTED** to the extent it seeks severance of Higginbotham's ADEA Counterclaim. Counterclaim One is **SEVERED** under Rule 21 and shall proceed as a separate action in this District. The Motion is **DENIED** to the extent any further relief is sought as to Counterclaim One.

2.  **Counterclaims Three through Six — Class B Claims.** The Motion is **DENIED** to the extent it seeks dismissal of the Class B claims under Rules 12(b)(3), 12(b)(6), or 12(b)(7). The Motion is **GRANTED** to the extent it seeks

26

severance and transfer of the Class B claims. Counterclaims Three through Six, to the extent they arise from or seek relief based on the Class B Unit Agreement, are **SEVERED** under Rule 21 and **TRANSFERRED** under 28 U.S.C. § 1404(a) to the United States District Court for the District of Delaware.

3. **Remaining Claims.** Higginbotham's remaining counterclaims and third-party claims, including any portions of Counterclaims Three through Six that do not arise from or seek relief based on the Class B Unit Agreement, remain pending in this action. Plaintiff's original claims likewise remain pending in this action.

The Clerk is directed to open a separate civil action in this District for Counterclaim One and to transfer to the United States District Court for the District of Delaware only those portions of Counterclaims Three through Six that arise from or seek relief based on the Class B Unit Agreement.

**IT IS SO ORDERED.**

Joseph Dawson, III
United States District Judge

Florence, South Carolina
May 27, 2026